PETER DANIELS REALTY, INC.,

v.

NORTHERN EQUITY INVESTORS, GROUP, INC.

**Appeal of: Wheatfield Village Homeowners Association.**

Superior Court of Pennsylvania.

Submitted Feb. 3, 2003.
Filed July 21, 2003.

Gregory H. Chelak, Milford, for appellant.

Eric L. Hamill, Milford, for appellee.

Before: STEVENS, KLEIN and BECK, JJ.

BECK, J.

¶ 1 We address the question of whether a provider of water to a specific limited community should be deemed a "public utility" as defined in 66 Pa.C.S. § 102. We conclude that unless the water service is available to all members of the public who may require it, such a provider is not a "public utility" as defined in 66 Pa.C.S. § 102.

¶ 2 This is an appeal from an order granting the Petition for Contempt brought by Appellee Northern Equity Investors Group, Inc. ("NEIG") against Appellant Wheatfield Village Homeowners' Association ("Wheatfield"). For the reasons that follow, we affirm.

¶ 3 NEIG developed a community of seventeen individually owned town homes in Milford Township. On June 15, 1998, NEIG and Wheatfield entered into a stipulation, made an order of the court, wherein Wheatfield assumed control of the community. The stipulation provided that NEIG would supply water to Wheatfield from NEIG's well. Wheatfield would be responsible for costs. NEIG would bill Wheatfield at the same rate that the Milford Water Authority charges its residents for water service. Wheatfield would be billed directly, not the individual town home owners.[1]

¶ 4 On February 12, 2002, after Wheatfield failed to pay any of the bills from NEIG for water service, NEIG filed a Petition for Contempt against Wheatfield for past due charges. On March 8, 2002, Wheatfield filed an answer alleging that NEIG was ineligible to collect water charges because it failed to obtain a Certificate of Public Convenience from the Pennsylvania Public Utility Commission. On March 25, 2002, the Pike County Court of Common Pleas held a hearing wherein NEIG presented testimony that Wheatfield owed it over $16,000. Wheatfield defended on the ground that NEIG had not procured a Certificate of Public Convenience. Therefore, under the law it was ineligible to collect charges for the water it supplied. On June 11, 2002, the court entered an Order granting NEIG's Petition for Contempt, directing Wheatfield to pay NEIG for water charges, plus interest, in accordance with the June 1998 stipulation and order. This timely appeal followed.

---

1. We note that this action in equity was originally commenced by Peter Daniels Realty against NEIG in 1996. Wheatfield joined as an intervener in 1998. At the same time that NEIG and Wheatfield entered into its stipulation, Peter Daniels Realty settled with NEIG and agreed to discontinue its action in equity. Peter Daniels Realty is not a party to this appeal.

¶ 5 Wheatfield presents the following issue in this appeal: whether the trial court abused its discretion or committed an error of law when it failed to find that NEIG is unlawfully operating as a public utility company by charging fees without having first obtained a Certificate of Public Convenience from the Public Utility Commission, which has exclusive jurisdiction over providing water to the public for compensation.

¶ 6 In reviewing contempt orders, we must consider that:

> [e]ach court is the exclusive judge of contempts against its process. The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute. When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge. On appeal from a court's order holding a party in contempt of court, our scope of review is very narrow. We are limited to determining whether the trial court committed a clear abuse of discretion.

*Garr v. Peters,* 773 A.2d 183, 189 (Pa.Super.2001) (citations omitted).

¶ 7 In pertinent part, the Pennsylvania Code defines a "public utility" as "[a]ny person or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities for ... [d]iverting, developing, pumping, impounding, distributing, or furnishing water *to or for the public* for compensation." 66 Pa.C.S. § 102(1)(ii) (emphasis added). The issue in this case is whether NEIG provided water "to or for the public," making it a "public utility," therefore requiring it to obtain a Certificate of Public Convenience from the Pennsylvania Public Utility Commission before collecting fees.

¶ 8 Wheatfield directs this Court's attention to *Warwick Water Works, Inc. v.*

*Pennsylvania Public Utility Commission,* 699 A.2d 770 (Pa.Commw.1997), for the proposition that one who supplies water to a smaller limited group of individuals may be considered to furnish water to or for the public. In *Warwick,* the water supplier furnished water to twenty-three rental units that it owned, as well as to a condominium association comprised of nineteen to twenty-five property owners within the same set of units. *Id.* at 772–773. *Warwick* challenged the jurisdiction of the Pennsylvania Public Utility Commission asserting that it was not a "public utility." *Id.* at 773. In determining that *Warwick* was in fact a "public utility," the Commonwealth Court found that *Warwick* was furnishing water "to or for the public for consumption," and not to any special class of persons. *Id.*

¶ 9 We begin by first noting that this Court is not bound by any decision of the Commonwealth Court. *Commonwealth v. Byrne,* 815 A.2d 637 (Pa.Super.2002). Rather, we are bound by holdings of the Pennsylvania Supreme Court. We find that *Drexelbrook Associates v. Pennsylvania Public Utility Commission,* 418 Pa. 430, 212 A.2d 237 (1965), is closely analogous to the instant case. In *Drexelbrook,* the Supreme Court found that an owner/management company of ninety buildings that furnished utilities, including water, was not a "public utility." *Id.* at 432–439, 212 A.2d at 237–241. The Court examined the meaning of "to or for the public" found within 66 Pa.C.S. § 102, and concluded that "the public or private character of the enterprise does not depend...upon the numbers of persons by whom it is used, but upon whether or not it is open to the use and service *of all members of the public* who may require it..." *Id.* at 435, 212 A.2d at 239 (emphasis supplied) (citations omitted). The Court held that it is the indefinite and unrestrict-

ed quality that gives it the public character; the public must be privileged to demand service. *Id.* at 436, 212 A.2d at 239–240. The Court found that the utilities were being provided to a special class of persons, not a class open to the indefinite public. *Id.* at 436, 212 A.2d at 239–240. *See also Aronimink Transportation Co. v. Public Service Commission,* 111 Pa.Super. 414, 170 A. 375 (1934).

¶ 10 Following the rationale in *Drexelbrook,* our Supreme Court again defined what is meant by "public utility," though in the context of a provider of natural gas, not a provider of water.[2] *Bethlehem Steel Corporation v. Pennsylvania Public Utility Commission,* 552 Pa. 134, 713 A.2d 1110 (1998). In *Bethlehem Steel,* the natural gas provider furnished the natural gas only to Bethlehem Steel's plant, although the provider unsuccessfully attempted to solicit contracts with other companies to furnish natural gas. *Id.* at 137–138, 713 A.2d at 1111. The Court held that despite the fact that the provider attempted to solicit other business, it failed to do so. Therefore, natural gas was supplied to Bethlehem Steel exclusively, and the public was not involved. The Court found the word "public" implies the population at large, not a single corporate entity. *Id.* at 142, 713 A.2d at 1114. By definition, a single user is not "the public." *Id.* at 142, 713 A.2d at 1114 n. 8.

¶ 11 The rationale of *Drexelbrook* and *Bethlehem Steel* compels the conclusion that NEIG is not a "public utility" within the meaning of the code. NEIG's services are certainly not open to the use and service of all members of the public who may require it, *i.e.,* the indefinite public. Additionally, no one single member of the public is privileged to demand its services.

Wheatfield is the single user, and a single user is not "the public." We can find no abuse of discretion or error of law committed by the trial court in granting NEIG's Petition for Contempt against Wheatfield.

¶ 12 Order affirmed.

---

2. We note that the language of 66 Pa.C.S. § 102 is the same for both water and natural gas with regard to requiring that, to be a "public utility," the gas must be furnished "to or for the public." *See* 66 Pa.C.S. § 102(1)(i).